**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ALMOND DICKENS, SR.,
Plaintiff-Appellant,

v.

MCI TELECOMMUNICATIONS
CORPORATION; JOE REVAK, Director,
MCI Communications Corporation
and Subsidiaries; MICHAEL DONNELL,
Senior Manager, MCI                                              No. 94-2494
Communications Corporation and
Subsidiaries,
Defendants-Appellees,

and

MCI COMMUNICATIONS
CORPORATIONAND SUBSIDIARIES,
Defendant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-94-113-A)

Argued: January 29, 1996

Decided: March 5, 1996

Before WIDENER and MOTZ, Circuit Judges, and PHILLIPS,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Richard Sweeney Brooks, CADE & VAUGHN-CARRINGTON, Arlington, Virginia, for Appellant. Christine Hope Perdue, HUNTON & WILLIAMS, Fairfax, Virginia, for Appellees. **ON BRIEF:** Maxine Bethel Cade, CADE & VAUGHN-CARRINGTON, Arlington, Virginia, for Appellant. David A. Walsh, HUNTON & WILLIAMS, Fairfax, Virginia; Anthony V. Alfano, MCI COMMUNICATIONS CORP., Washington, D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Almond Dickens, a forty-six year old African-American male, alleges that his employer, MCI Telecommunications Corp (MCIT), discriminated against him on the basis of race and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000R et seq. and the Age Discrimination in Employment Act of 1967, 29 § 621, et seq. (ADEA). Specifically, Dickens alleges that MCIT's reclassification of him from a Senior Manager to a Manager III constituted illegal sex and age discrimination. Additionally, he alleges that he was subject to retaliation for his complaints about racial harassment. The district court granted summary judgment in favor of MCIT. Finding no error, we affirm.

I.

Dickens began his employment with MCIT in April 1982, when he was hired as a Manager III. In 1984, he was promoted to the position of Senior Manager in the Billing Production Control Department. Subsequently, Dickens transferred to the Computer Operations

2

Department, also as a Senior Manager. In 1992, Dickens' responsibilities expanded to include Mid-Range operations and Local Area Network ("LAN") operations. Dickens was responsible for three LAN facilities in the Washington, D.C. area.

In January, 1993, Dickens' department was transferred from Systems Engineering to Network Services, another "business group" within MCIT. Following this transfer, Dickens retained his responsibilities for Mid-Range and LAN operations, but some of his prior billing-related duties remained in Systems Engineering, and the 20-25 employees handling that function no longer reported to Dickens. Dickens began reporting to the Director of Network Services, Joe Revak. Dickens makes no claim in this case that this transfer was discriminatory.

At the time Dickens' department was transferred, there were three (white) Senior Managers in Network Services, Ray Dobe, James Markle and Michael Donnell, each responsible for a distinct functional area. Dickens has never performed any of the functions performed by Dobe or Markle, and has no knowledge of their background or qualifications. Dickens claims to have experience in two of the nine functions performed by Donnell. Shortly after the transfer of Dickens' department to Network Services, the Director of Network Services, Joe Revak, met with Dickens to discuss the structure of the department and the responsibilities of the department's employees. As a result of this meeting, Revak became concerned that there seemed to be employees in the department with different classifications and grades who were performing the same functions. Additionally, he was concerned that the department appeared "top-heavy," with more managers and supervisors than necessary given the size of the department. Consequently, in March, 1993, Revak requested that the Human Resources Department conduct a job evaluation study for the employees in Dickens' department. The purpose of this study was to ensure consistency in job titles and grades, both within the department itself, and within the entire Network Services unit. The study, completed in July or August, 1993, confirmed that there were a number of employees whose classifications and grades were "inflated" when compared to their level of responsibility, and Revak "reduced them accordingly." Both African-American and white employees experienced such reductions. The study also indicated that two

3

employees should be considered for grade increases. Revak concluded that an increase was warranted for Carol Benjamin, who is African-American, but that another employee, who is white, should remain at her current level.

In August, 1993, Revak also made certain operational changes that impacted Dickens. First, he transferred the print shop, which Dickens had carried over from Systems Engineering, to Corporate Administration. Revak made this change because he felt that the print shop was better suited to an administrative department, rather than a maintenance and operations unit such as Network Services. Dickens supported this decision.

Revak also shifted responsibility for Mid-Range operations from Dickens to Ray Dobe. The Mid-Range operations function was more similar to Dobe's terminal operations than to Dickens' LAN operations, and Revak concluded that it would be more efficient to have mid-range operations and terminal operations under the same manager. The mid-range operations manager, who agreed with this shift was moved from Dickens' department to Dobe's department to continue supervising mid-range operations. Similarly, Mike Welsh, another Manager III under Dickens, was reclassified to a staff position and transferred to Michael Donnell's department. Some of Welsh's staff were also transferred; others on Welsh's staff remained in Dickens' department and assumed LAN responsibilities. The supervisor under Welsh, Joanne Reynolds, was transferred to Dobe's department and reclassified to a non-supervisory position at her own request. Dickens acknowledges that organizational changes are common at MCIT. Moreover, although he does not agree with some of the organizational and personnel changes Revak made, Dickens does not claim that they were motivated by race or age discrimination.

In August, 1993, Revak informed Dickens of the various organizational and personnel changes that were being made, and also advised Dickens that because of these changes, Dickens was being reclassified as a Manager III, and his grade level was being changed from G-11 to G-10. This change was a direct result of the other organizational and personnel changes; Revak concluded that it was not necessary to have a Senior Manager dedicated solely to LAN operations. The fact that Dickens had fewer managers and a reduced staff reporting to him

4

following the personnel changes was also a consideration. Revak told Dickens that he could apply for other Senior Manager positions within Network Services if any opened up. Jim Markle's position became available in June, 1994, but Dickens did not express any interest in that position.

Dickens sought review of his reclassification through MCIT's "open-door policy." His claims were investigated by MCIT's Vice President of Employee Relations, Carlton Stockton, who is African American, and by Charles Trusty, a member of MCIT's human resources staff. Revak's decision to reclassify Dickens was upheld.

On September 22, 1993, Dickens filed a charge of employment discrimination with the EEOC, alleging that his reclassification was a result of age and race discrimination. Following a request from Dickens, the EEOC issued a right-to-sue notice on January 10, 1994, before it had concluded its investigation. On March 5, 1994 (after the MCIT filed a motion to dismiss Dickens' retaliation claims as outside the scope of his original charge), Dickens filed a second charge with the EEOC, alleging retaliation for filing the first EEOC charge.

II.

A plaintiff can establish a cause of action for race or age discrimination under Title VII and the ADEA in one of two ways. First, he may rely on direct evidence of discrimination or circumstantial evidence of sufficient probative force to support an inference of discrimination. Goldberg v. B. Green and Co., 836 F.2d 845, 847-48 (4th Cir. 1988). Second, he may establish a prima facie case of discrimination under the scheme articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). This scheme requires a plaintiff alleging a discriminatory demotion to prove the following elements:

> (1) Membership in a protected group;
>
> (2) Qualification for the job and performance up to the employer's legitimate expectations;
>
> (3) Demotion; and

5

(4) Replacement by someone of comparable qualifications outside the protected class, or the retention of persons outside the protected class in the same position, or some other evidence that age or race was not treated neutrally.

EEOC v. Western Electric Co., 713 F.2d 1011, 1015 (4th Cir. 1983); Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 239 (4th Cir. 1982). If the plaintiff establishes a prima facie case, the employer is then required to produce evidence of a legitimate, non-discriminatory reason for its actions. See, e.g., Western Electric Co., 713 F.2d at 1014; St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2747 (1993). The plaintiff, at all times, retains the burden of proving intentional discrimination, which may be accomplished by showing that the reasons proffered by the employer for its actions are pretextual. St. Mary's Honor Ctr., 113 S. Ct. at 2747.

A plaintiff establishes a prima facie case of retaliation by showing that (1) he engaged in protected activity, (2) his employer took adverse action against him and (3) there was a causal connection between the protected activity and the adverse action. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir 1985). As with a claim of intentional race or age discrimination, once a plaintiff has established a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse action. Id. After such a reason is proffered, the plaintiff can only prevail by showing that the proffered reason is pretextual. Id.

III.

A.

The district court correctly found that Dickens failed to establish a prima facie case of age discrimination. Dickens offered no direct evidence to show that his age was a determining factor in the decision to reclassify him. EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1992). The only circumstantial evidence of age discrimination Dickens offered was his belief that the other three Senior Managers in Network Services were younger than he, and the fact that he was required to report to Michael Donnell, who is younger than Dickens.

6

In fact, one of the three Senior Managers, Ray Dobe, is older than Dickens. Moreover, even if Dickens' belief were correct, the circumstantial evidence Dickens offers does not make it "reasonably probable," that but for his age, he would not have been reclassified. Lovelace, 681 F.2d at 242.

Dickens also failed to establish a prima facie case of age discrimination under the McDonnell Douglas analysis. Assuming, without deciding, that Dickens' reclassification constituted a demotion, Dickens is unable to satisfy the fourth prong of the McDonnell Douglas test. It is undisputed that Dickens was not replaced as Senior Manager of LAN operations, rather, that position was eliminated. Dickens asserts that the retention of the other three Senior Managers satisfies the fourth prong of the McDonnell Douglas analysis. We do not agree. First, we note that Ray Dobe, who is older than Dickens, was retained as a Senior Manager. Additionally, none of the three Senior Managers who retained their positions were similarly situated to Dickens. Although they had the same job title, their job responsibilities differed from Dickens'. Dickens has not offered any other evidence that MCIT did not treat age neutrally in its reclassification decisions. Therefore, Dickens failed to establish a prima facie case of age discrimination.

B.

The district court was also correct in holding that Dickens failed to establish a prima facie case of race discrimination. As with his age discrimination claim, Dickens introduced no direct evidence of intentional race discrimination and introduced insufficient circumstantial evidence of intentional race discrimination. Thus, unless he can satisfy the requirements of the McDonnell Douglas scheme, his race discrimination claim must fail. Like his age discrimination claim, Dickens' race discrimination claim fails to satisfy the fourth prong of the McDonnell Douglas test, because no similarly situated white Senior Manager was retained when Dickens was reclassified.

C.

Finally, the district court correctly dismissed Dickens' claim of retaliation. Dickens complains of various incidents with respect to this

7

claim. First, he alleges that two "harassing" cartoons were either posted on his door or sent to him via inter-office mail. Second, he asserts that a confrontation between himself and Michael Donnell was retaliatory. Third, he alleges that his 1993 performance review was delayed in retaliation for his filing of the EEOC charge. There is no evidence in the record to indicate a causal connection between any of these incidents and Dickens' filing of the EEOC charge. Consequently, Dickens failed to establish a prima facie case of retaliation, and summary judgment on this claim was also appropriate.

IV.

The district court's order granting summary judgment in favor of MCI Telecommunications is therefore

AFFIRMED.

8